## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **IRAIDA PRADO,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **CASE NO.:**_____ |
| **LIBERTY LIFE ASSURANCE** | ) |
| **COMPANY OF BOSTON** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Comes now the Plaintiff, Iraida Prado, and hereby files her Complaint against Liberty Life Assurance Company of Boston.

## PARTIES

1.     The Plaintiff, Iraida Prado ("Prado"), is an insured under Long-Term Disability Policy No. GF3-850-277295-01 ("the Plan").

2.     Defendant, Liberty Life Assurance Company of Boston ("Liberty"), is the Claims Administrator for the Plan, issued to VITAS Healthcare Corporation. Upon information and belief, Liberty is a foreign corporation incorporated in the Commonwealth of Massachusetts, which conducts business generally in the State of Alabama and specifically within this District.

## JURISDICTION AND VENUE

3.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq.  Plaintiff asserts claims for long-term disability benefits, enforcement of ERISA rights and statutory violates of ERISA under 29 U.S.C. §1132.  This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties.  29 U.S.C. §1132(a),(e)(1) and (f) and 28 U.S.C. §1131.  Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

## INTRODUCTION

4.     Defendant has flagrantly violated ERISA regulations by repeatedly delaying the review of Ms. Prado's claim and ultimately failing to make the correct determination on her appeal.    The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit plans."  *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983).  Ms. Prado, as an employee insured for disability, was supposed to be treated as a beneficiary by Defendant as statutory fiduciary.  Instead, Defendant breached those duties and victimized Ms. Prado by engaging in utterly reprehensible claim handling procedures.  As described in more detail below, Defendant has clearly engaged in bad faith claim handling and Ms. Prado, at minimum, is entitled to *de novo* review and all relief that ERISA provides.

## STATEMENT OF FACTS

5.     Ms. Prado is an insured under the Liberty Life Assurance Company of Boston, No. GF3-850-277295-01, issued to her employer, VITAS Healthcare Corporation. Liberty is the administrator of the plan. The Policy provides insureds, like Ms. Prado, long-term disability benefits.

6.     Ms. Prado was born on July 2, 1959. She worked at VITAS Healthcare Corporation employee as a licensed practical nurse (LPN) until her disabilities, primarily from severe lymphedema, forced her to stop working on or around April 24, 2008.

7.     Ms. Prado's medical disabilities include lymphedema of the right upper extremity, limited mobility, extreme fatigue, tiredness, and immense chronic pain. Ms. Prado also takes medications prescribed by her treating physicians with side effects that cause fatigue and affect her concentration and ability to perform tasks.  The symptoms of her conditions render Ms. Prado completely unable to perform any work.

8.     Ms. Prado applied for Social Security Disability benefits due to her many impairments.   She was approved for Social Security Disability and began receiving benefits in 2009.   (*See* Claimant's Supplementary Statement, attached hereto as Exhibit "A").

9.     Ms. Prado applied and was approved for long-term disability benefits

3

from Liberty beginning October 24, 2008.  Liberty paid long-term disability benefits to Ms. Prado until wrongfully terminating her benefits due to her physical conditions on May 24, 2013.  Liberty stated that her claim for benefits based on her conditions of her right arm and shoulder was not applicable to her policy.  (*See* Termination letter from Liberty dated May 24, 2013, attached hereto as Exhibit "B").

10.    By letter dated November 19, 2013, Ms. Prado appealed the wrongful termination of her long-term disability benefits for her physical conditions.  Ms. Prado included with her appeal letter additional medical records and declarations. (*See* Appeal Letter Dated November 19, 2013, attached hereto as Exhibit "C").

11.    By letter dated February 4, 2014, Liberty informed Ms. Prado that an appeal review had been completed and Liberty was upholding the termination of long-term disability benefits beginning May 24, 2013. (*See* Final Denial Letter from Liberty, dated February 4, 2014, attached hereto as Exhibit "D").

12.    Despite providing proof of her disability both before the termination of benefits and throughout the appeals process, Liberty refused to award additional benefits.  The final denial letter, like the previous letters, improperly found that Ms. Prado did not meet the Policy definition of disabled.  Liberty's denial letters are riddled with attempts to "cherry-pick" the record for evidence that supports its termination and give little or no weight the plethora of evidence that supports Ms.

Prado's disability.

13.     As of this date, Ms. Prado has been denied benefits rightfully owed to her under the Plan.  Liberty's decision to terminate benefits under the Plan policy was grossly wrong, without basis and contrary to the evidence.

14.     Ms. Prado has met and continues to meet the Plan's definition of disabled.

15.     Defendant did not establish and maintain a reasonable claim procedure or provide a full and fair review of Ms. Prado's claim as required by ERISA.  Instead, Defendant acted in its own pecuniary interests and violated ERISA by conduct including but not limited to the following: breaching its fiduciary duty to the Plaintiff; reviewing the claim in a manner calculated to reach the desired result of denying benefits; failing to properly consider and credit the medical opinions of Ms. Prado's medical providers; and failing to properly consider and credit the determination of the SSA.

16.     Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to Liberty or to any other entity who may have adjudicated Ms. Prado's claim. Therefore, the Court should review the Plaintiff's claim for benefits under a *de novo* standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the alternative, the denial of Plaintiff's benefits constitutes an abuse of discretion.

17.     Upon information and belief, Liberty was required to both evaluate and pay claims under the Plan at issue, creating an inherent conflict of interest.

18.     Ms. Prado has exhausted any applicable administrative review procedures, and Liberty's refusal to pay benefits is both erroneous and unreasonable and has caused tremendous financial hardship on Plaintiff.

## DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT

### A. Defendant's Determination that Plaintiff does not Meet the Definition of Disability as Stated in the Plan was both Erroneous and Unreasonable.

19.     The Long-Term Disability Plan in question states the following:

**"Disability"** or "**Disabled"**, with respect to Long Term Disability, means:

> During the Elimination Period and until the Covered Person reaches the end of the Maximum Benefit Period, as a result of an Injury or Sickness, he is unable to perform the Material and Substantial Duties of his own occupation

> If the Covered Person is eligible for the 24 month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

> Thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation

(*See* Long-Term Disability Policy No. GF3-850-277295-01, attached hereto as Exhibit "E")

20.     Defendant failed to properly evaluate the effect of Plaintiff's pain and fatigue on the ability to perform the duties of any occupation, much less her own.   In addition to suffering from constant pain, Ms. Prado's cognitive impairments would render her ineffective in any work environment. Defendant primarily relied on the reports of hired medical reviewers to ascertain that Ms. Prado could perform her own occupation at a light or sedentary category.   The findings are contrary to the opinions of her treating physicians. Accordingly, Liberty's contention that Ms. Prado failed to prove that she was disabled under the Plan must be rejected as Liberty's decision to deny Plaintiff's benefits necessarily imposed a standard that was not required by the Plan's provisions.   See *Soucy v. First UNUM Life Ins. Comp.*, 2011 U.S. Dist. LEXIS 27938*89-90.

### B. Defendant's Decision to Deny LTD Plan Benefits was not Supported by Substantial Evidence.

21.     In its consideration of Ms. Prado's claim, Defendant only retained paid consultants to review her file. Defendant bases its denial entirely on the allegation that Ms. Prado's medical records do not demonstrate that her disabilities make her unable to work at any position.   Further, in denying Ms. Prado's claim,

Liberty failed to give proper weight to the medical evidence provided by her treating physicians.

1. Defendant's Reliance on Paper-Reviews to Deny Benefits on the Basis of Insufficient Evidence Was Arbitrary and Capricious.

22.    Ms. Prado's claim file is replete with medical records from her treating physicians extensively detailing disabilities throughout 2013 and up to Defendant's final February 2014 denial.  Ms. Prado's physicians' assessments, as well as the testing, treatment procedures, and medications they prescribed and administered all demonstrate that Ms. Prado's diagnosed disabilities were extremely debilitating.

23.    The records of Ms. Prado's long-standing medical providers, who have no stake in the outcome of the case, clearly evidence that she is disabled based on their numerous personal examinations, testing, and procedures.  Liberty's hired medical reviewers, on the other hand, did not examine Ms. Prado.  The conclusion that Ms. Prado was not disabled was based merely on hired reviewers' assessment of her paper medical records. *See Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801,809 (6th Cir. 2002)(finding that evidence in the administrative record did not support the revocation of benefits because the only doctors that disagreed with the treating physicians were non-examining consultants hired by the insurance company); *see also Kalish v. Liberty Mutual*, 419 F.3d 501, 508 (6th Cir. 2005)("[w]hether a doctor has physically examined the claimant is

indeed one factor that we may consider in determining whether a plan administrator acted arbitrarily and capriciously in giving greater weight to the opinion of its consulting physician").

24.    In weighing the opinions of Ms. Prado's providers against those of the independent reviewers retained by Liberty, the Court should consider the following factors: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) other relevant factors. *See Karanda v. Connecticut Gen. Life Ins. Co., et al.,* 158 F. Supp. 2d 192, 205 and n.8 (D. Conn. 2000) (citing *Durr v. Metropolitan Life Ins. Co.,* 15 F. Supp. 2d 205, 213 (D. Conn. 1998)).  The Court in *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 832, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003) recognized that "treating physicians, as a rule, have a greater opportunity than consultants to know and observe the patient as an individual."  While *Nord* provides that this Court is not required to adopt a per se rule to treat Ms. Prado's physicians' opinions with more weight than those of Defendant's medical assessors, "[c]ommon sense and a stream of legal precedent suggest, however, factual determinations of a treating physician are objectively more reliable." *Burt v. Metropolitan Life Insurance Co.,* No. 1:04-CV-2376-BBM, 2005 U.S. Dist. LEXIS 22810, at *33 (N.D. Ga. Sept. 16, 2005); *see also Finazzi v. Paul Revere Life Ins. Co.*, 327 F.Supp.2d 790, 795-96 (W.D.

Mich. 2004) ("the Court is not obliged to 'rubber stamp' [defendant's] termination of benefits . . .").

25.    Paid experts are more often than not pre-disposed or preconditioned. Courts have consistently expressed their skepticism of such "experts" and held their reviews to be the very essence of arbitrariness and capriciousness. *Bennett v. Kemper HAT-Svcs, Inc.* 514 F. 3d 547, 554-55 (6th Cir. 2008); *Montour v. Hartford Life and Acc. Ins. Co.,* 588 F. 3d 623 (9th Cir. 2009); *Regula v. Delta Family Care Plan* 226 F.3d. 1130, 1143 (9th Cir. 2001).  The Supreme Court has acknowledged that "physicians repeatedly retained by benefits plans may have an 'incentive to make a finding of "not disabled" in order to save their employers money and preserve their own consulting agreements.'" *Nord,* 538 U.S. 822, 832, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003).  The fact that their reports are consistently in conflict with the opinion of treating doctors' determinations should be viewed as evidence of a structurally conflicted process that results in bias.  Clearly, in Ms. Prado's case, these decisions indicate that her own medical physicians' evaluations should be afforded far greater weight than those of Defendant.  Accordingly, Defendant's denial of Ms. Prado's LTD benefits, based on insufficient evidence, was arbitrary and capricious.

26.    Ms. Prado's treating physicians, who have no financial stake in the outcome of her claim, reached the opinion that she is disabled based on their

numerous examinations of her.  The opinions of Dr. Ference, and referring surgeon, specialists in their respective fields, are consistent with the objective medical evidence in Ms. Prado's claim file, including extensive testing, examinations and lab results.  (*See* Dr. Ference Records, dated January 15, 2014, attached hereto as Exhibit "F").

27.    Instead of giving greater weight to the opinions of Ms. Prado's treating physicians, Liberty manufactured support for its termination based upon the opinions of salaried employees of Liberty and the opinions of their own doctors.  Liberty's physician, Dr. Ephraim K. Brenman, did not examine Ms. Prado; he was simply paid by Liberty to come to the predetermined conclusion that Ms. Prado is not disabled.  Additionally, Liberty's own physician, Dr. Anthony Pannozzo, did not support the findings of Ms. Prado's own physicians despite noting that Ms. Prado's right arm was limp, much larger than her left, and was not being used. (*See* Exhibit "G").

28.    The baseless findings of Liberty's non-examining physician and consulting physician stand alone as the only findings in Ms. Prado's file suggesting that she is not disabled and are overwhelmed by the numerous treatment records and the opinions of her treating physicians suggesting the opposite.

29.    Liberty's termination of benefits was unsupported, made in bad faith and ignored the full record in this matter.

30.     As of this date, Liberty refuses to pay benefits rightfully owed to Ms. Prado under the policy at issue.

2.     Defendant's Failure to Properly Credit Ms. Prado's Well-Documented Subjective Complaints Was Arbitrary and Capricious.

31.     Admittedly, some of Ms. Prado's disabling impairments have subjective components; however, they have been diagnosed by her treating physicians based on her medical history, extensive testing, and physical examinations.  Defendant far exceeds its discretion to ascertain Ms. Prado's credibility by characterizing the bulk of her treatment records as somehow flowing from her own subjective reports of pain, and thus equally subject to rejection as non-credible.

32.     In *Quigley v. UNUM Life Ins. Co. of America,* 340 F. Supp. 2d 215, 224  (D. Conn. 2004), the Court held "[w]here the record reveals well-documented complaints of chronic pain, and there is no evidence in the record to contradict the claimant's complaints, the claim administrator, and the court, cannot discredit the claimant's subjective complaints."

33.     An administrator may not exclude a claim for lack of objective medical evidence unless that standard was made "clear, plain and conspicuous enough [in the policy] to negate layman [plaintiff's] objectively reasonable expectations of coverage." *Saltarelli v. Bob Baker Group Medical Trust et al.,* 35 F.3d 382, 387 (9th Cir. 1994); *see also May v. Metro. Life Ins. Co.,* 2004 U.S. Dist.

12

LEXIS 18486, \*26 (N.D. Cal. Sept. 9, 2004) ("MetLife abused its discretion by requiring that Plaintiff meet an additional requirement for eligibility beyond those imposed by the Plan."); *see also Duncan v. Continental Cas. Co.,* 1997 U.S. Dist. LEXIS 1582, \*15-17 (N.D. Cal. Feb. 10, 1997) (finding an insurer improperly denied the claim of the plaintiff, who had fibromyalgia, due to a lack of "objective medical evidence" to support her disability claim).

34.     In *Creel v. Wachovia Corp.,* No. 08-10961, 2009 U.S. App. LEXIS 1733, 2009 WL 179584 (11th Cir. Jan. 27, 2009) and *Oliver v. Coca-Cola Co.,* 497 F.3d 1181, 1196-97 (11th Cir. 2007), *vacated in part on other grounds*, 506 F.3d 1316 (11th Cir. 2007), the United States Court of Appeals for the Eleventh Circuit considered when it was substantively reasonable to deny benefits for disabilities involving subjective elements. In *Creel,* the plaintiff applied for disability benefits based on a diagnosis of depression, anxiety, and migraine headaches. She received long-term disability benefits, but the benefits were terminated after twenty-four months pursuant to a mental disorder limitation. She sued the insurance company to recover additional benefits based on her migraine headaches. She provided chart notes, standard diagnoses, and lab reports to support her claim, but the district court entered summary judgment against her because she did not provide objective evidence. The Court of Appeals vacated the summary judgment order, explaining:

> Our prior cases provide guidance for assessing the reasonableness of benefits denials for disabilities that involve some subjective element, such as migraines, fibromyalgia, and chronic pain syndrome. . . . When the plan has no [objective evidence requirement,] we evaluate the reasonableness of the decision in light of the sufficiency of the claimant's subjective evidence and the administrator's actions. Assuming that the claimant has put forward ample subjective evidence, we look at what efforts the administrator made to evaluate the veracity of her claim, particularly focusing on whether the administrator identified any objective evidence that would have proved the claim and on what kinds of independent physician evaluations it conducted. Accordingly, an administrator's decision to deny benefits would be unreasonable if it failed to identify what objective evidence the claimant could have or should have produced, even if the administrator submitted the file for peer review.

2009 U.S. App. LEXIS 1733, [WL] at *7.

35.     Applying this standard, the Court of Appeals in *Creel* found that the records offered by the plaintiff to corroborate her subjective complaints of disabling headaches were sufficient to support her claim and held that the administrator's decision was both wrong and unreasonable. 2009 U.S. App. LEXIS 1733, [WL] at *8.  Similarly, in *Oliver*, the plaintiff sued his employer to recover long term disability benefits based upon radiculopathy and associated cervical pain, fibromyalgia, and chronic pain syndrome. The Court of Appeals held that it was arbitrary and capricious for an employer to deny benefits for disabilities involving elements of subjective pain when the claimant provided ample evidence and the administrator never requested any additional kind of evidence. *Oliver,* 497 F.3d at 1196-97.

14

36.    Here, Ms. Prado provided extensive objective and subjective evidence of her disabilities.  Her medical records contain well-documented complaints of pain and swelling in her right arm, depression, stress, limited mobility, and other symptoms as a result of her medications and constant discomfort.  Although Liberty had paid medical reviewers consider her file, those reviewers never actually examined Ms. Prado, and they failed to provide any valid independent basis for their conclusion that she is not disabled under the Plan.  Here, Ms. Prado has provided subjective evidence *and extensive objective evidence*, all supporting her claim of disability as defined in the Plan.  Accordingly, Defendant's decision to deny disability benefits was substantively unreasonable.

3.    <u>Liberty Unreasonably Failed to Properly Consider Ms. Prado's Non-Exertional Limitations.</u>

37.    Ms. Prado has provided credible medical evidence that she is unable to move her arm sufficiently, suffers from depression, and is on various medications for pain management and other issues. All of these cause even more symptoms of confusion, fatigue and anxiety. (*See* Exhibit "H").

38.    Courts must consider a plaintiff's non-exertional limitations, including (1) intellectual and psychological limitations, including those related to the side effects of prescription medications and pain; (2) limited manual dexterity; and (3) a limited ability to remain seated for an extended period of time. Such non-exertional limitations can be important aspects of vocational capacity. *See Rabuck v. Hartford*

*Life and Accident Ins. Co.,* 522 F. Supp. 2d 844, 876-77 (W.D. Mich. 2007) (holding that failure to consider non-strength limitations of former company president with short-term memory limitations rendered Transferable Skills Analysis "incredible").

39.     The evidence, therefore, plainly shows that that Ms. Prado's non-exertional limitations, even without her exertional limitations which Defendant's own reviewers acknowledge exist, clearly preclude her participation in any gainful occupation, much less her own. It was, therefore, unreasonable for Liberty to completely ignore the impact of Ms. Prado's non-exertional limitations in its denial.

### C.     Defendants Failed to Justify Taking a Position Different from the SSA on the Question of Disability.

40.     Defendants failed to discuss any substantive reasons for reaching a decision contrary to that of the SSA.

41.     In stark contrast to Defendant's findings, upon which the termination of benefits was based, that plaintiff had no medical impairment that would limit her functional ability to perform in a sedentary occupation; the Social Security Administration found plaintiff disabled and granted her SSD benefits on initial application.

42.     When considering whether a claimant is disabled under sections 216(i) and 223(d) of the Social Security Act, the agency must determine whether

the claimant has the inability to engage in any substantial gainful activity (SGA) by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

43.     Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

44.     At step one, the agency must determine whether the claimant is engaged in substantial gainful activity (20 CFR 404.1520(b)).  If an individual engages in substantial gainful activity, he or she is not disabled regardless of how severe his or her physical or mental impairments are and regardless of his or her age, education, or work experience.  If the individual is not engaged in SGA, the analysis proceeds to the second step.

45.     At step two, the agency must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  If the

claimant does not have a severe medically determinable impairment or combination of impairments, he or she is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

46.     At step three, the agency must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).  If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

47.     Before considering step four, the agency must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)).  An individual's residual functional capacity is his or her ability to do physical and mental work activities on a sustained basis despite limitations form his or her impairments.

48.     Next, the agency must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work (20 CFR 404.1520(f)).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  If the claimant is unable to do any past

relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

49.   At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the agency must determine whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.  If the claimant is able to do other work, he or she is not disabled. If the claimant is not able to do other work and meets the duration requirement, he or she is disabled.

50.   Defendants did not bother to explain why their decision was contrary to the Social Security Administration's decision.  Instead, Defendants have simply claimed that the Social Security Administration's definition of disability is "different" from the definition of disability in the policy at issue.  Under the terms of the policy, Ms. Prado had to prove that she was unable perform, with reasonable continuity, the material and substantial duties of any occupation.  (*See* Exhibit "E").  Yet, to be disabled under the Social Security regulations, she had to prove that was she **unable to perform any work that she performed in the past 15 years and that she was unable to adjust to other work considering her residual functional capacity, age, education and work experience**.  Clearly the SSA's definition of disability is more stringent than the definition of disability in the policy at issue.

51.     Furthermore, historically only 35% of Social Security disability claims are initially approved.[1] In addition to being approved on initial application, the fact that Ms. Prado was approved by the SSA at all, given her age, is another indication that her impairments are truly disabling.

52.     A claimant whose age is between 18-49 years old, like Ms. Prado, is considered a younger individual by Social Security standards.  The age category a claimant falls into is extremely important, especially when considering his or her exertional limitations, in that the SSA assumes it is easier for a younger individual to adjust to other work.   Given that Ms. Prado was a younger individual by Social Security standards, it is clear that the approval of benefits was based on a finding that her exertional limitations prevented her from performing even sedentary work or a combination of her exertional and non-exertional limitations, such as difficulty with memory, concentration etc., rendered her unable to engage in *any* substantial gainful activity.

53.     Courts have determined that the Social Security Administration's disability decision should be a "significant factor" in the consideration of an administrator's decision to terminate plaintiff's disability benefits. *Glenn,* 461 F.3d at 669. *See also Calvert v. Firstar Finance, Inc.,* 409 F.3d 286, 294 (6th Cir. 2005) ("the SSA determination, though certainly not binding, is far from meaningless").

---

[1] (*See* Social Security Admin., 2011 Disabled Worker Beneficiary Statistics, at www.ssa.gov)

Even though a favorable decision in a Social Security disability appeal does not make a claimant automatically entitled to disability benefits under an ERISA plan: [i]f the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary or capricious.  *Bennett v. Kemper Nat. Services, Inc.,* 514 F.3d 547, 554 (6th Cir. 2008). *See also DeLisle v. Sun Life Assur. Co. of Canada,* 558 F.3d 440, 446 (6th Cir. 2009).

54.    Here, the plan required the plaintiff apply for Social Security disability benefits.   Plaintiff signed a formal agreement acknowledging Defendants' right to offset her LTD benefits by Social Security. Defendants were on notice of the favorable decision, but in the termination letters, failed to explain why a conclusion contrary to that of the Social Security Administration's finding of disability was reached.  The "mere mention of the [Social Security] decision is not the same as a discussion about why the administrator reached a different conclusion from the SSA." *Bennett,* 514 F.3d at 553, n.2. All three *Bennett* factors weigh against Defendants' decision to deny plaintiff's benefits.

## COUNT ONE
## ERISA (Claim for Benefits Owed under Plan)

55.     Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

56.     At all times relevant to this action, Ms. Prado was a participant of the LTD Policy No. GF3-850-277295-01 ("the Plan") within the meaning of 29 U.S.C. §1002(7), and was eligible to receive disability benefits under the Plan.

57.     As more fully described above, the refusal to pay Ms. Prado benefits under the Plan for the period from at least on or about May 24, 2013 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA. Defendant's decision to deny Ms. Prado's benefits constitutes an abuse of discretion as its decision was not reasonable and not based on substantial evidence.

58.     Ms. Prado brings this action to recover benefits due to her and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(1)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an Order providing that:

1.     The applicable standard of review in this case is *de novo*.

2.     That the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate *de novo* review;

22

3.     From at least April 24, 2008 through the present, Ms. Prado met the Plan's definition of "Disabled";

4.     Defendant shall pay Ms. Prado all benefits due for the period from at least May 24, 2013 through the present, in accordance with the Plan;

5.     Defendant shall pay to Plaintiff such prejudgment interest as allowed by law;

6.     Defendant shall pay Plaintiff's costs of litigation and any and all other reasonable costs and damages permitted by law;

7.     Defendant shall pay attorney's fees for Plaintiff's counsel;

8.     Plaintiff shall receive such further relief against Defendant as the Court deems lawful, just and proper.

9.     In the alternative, Plaintiff prays the Court to enter an Order remanding this case to Defendant, as administrator, to reconsider Plaintiff's appeal, taking into full consideration the evidence presented to the Social Security Administration.

Respectfully Submitted,

/s/ *Peter H. Burke*_____
Peter H. Burke (ASB-1992-K74P)


/s/ *Amanda Stansberry-Johns*_____
Amanda Stansberry Johns (ASB-7793-M64S)



**OF COUNSEL**:
**BURKE HARVEY, LLC**
3535 Grandview Parkway
Suite 100
Birmingham, Alabama 35243
Phone: 205-930-9091
Fax:   205-930-9054
pburke@burkeharvey.com
ajohns@burkeharvey.com



**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON
CSC Lawyers Incorporating Service, Inc.
150 South Perry Street
Montgomery, AL 36104